```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


WYVONNA D. PETE,                )
                                )
               Plaintiff,       )
                                )
vs.                             )    Case No. 08-1010-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
               Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On December 14, 2006, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 18-26).  Plaintiff alleges disability beginning November 1, 2004 (R. at 18).  Plaintiff is insured for disability insurance benefits through December 31, 2007 (R. at 18, 20).  At step one, the ALJ found that plaintiff

4

did not engage in substantial gainful activity since November 1, 2004, the alleged onset date (R. at 20).  At step two, the ALJ found that plaintiff had the following severe impairments: hyperthyroidism with resulting obesity, history of treatment for anxiety, chronic obstructive pulmonary disease (COPD) (R. at 20).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21).  After determining plaintiff's RFC (R. at 21), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err by failing to consider the opinion of Dr. Meek regarding whether plaintiff was disabled?**

In his decision, the ALJ stated the following concerning the opinions of Dr. Meek, a treating physician:

> The medical record reveals Dr. Meek wrote on August 30, 2005 that the claimant had complaints of hypothyroidism including swelling of the legs and back, dizziness, sluggishness, and falling out of hair on her head. He informed the claimant that she should be on increased levothyroxine. He also stated that with appropriate thyroid hormone supplementation, her euthyroid level should return to normal (Exhibit 11F, p.17). However, it is clear from the record that the claimant did not comply. **Dr. Meek wrote on August 24, 2006, that the claimant often did**

> **not keep scheduled appointments. Additionally, he wrote that the claimant had been educated regarding the radioactive iodine treatment she had received for hyperthyroidism and that the outcome would be hypothyroidism for which she would have to take daily medication. According to Dr. Meek, in a compliant patient, the proper dose of thyroid hormone should fully correct the hypothyroidism (Exhibit 20F).** Dr. Meek wrote on May 2, 2006, that the claimant mistakenly believes that the thyroid tablets are responsible for her complaints of fatigue, weight gain, puffiness, and numbness of the hand. He told the claimant that she must take her thyroid hormone faithfully because the symptoms were due to lack of thyroid hormone, which would be corrected by her prescribed medication (Exhibit 14F, p.2), The claimant testified that she could not afford the co-pay to go into the office as often as she should. However, the record shows that Dr. Meek was concerned that the claimant gets regular care for hypothyroidism and encouraged the claimant to get regular treatment at a free clinic (Exhibit 14F, p.2).

(R. at 23, emphasis added).  Dr. Meek's letter of August 24, 2006, which sets forth the opinions of Dr. Meek, states the following:

> ...Following treatment with radioactive iodine, the patient's hyperthyroidism was corrected, however, she developed post radioactive iodine hypothyroidism in April 2005 and presumably the hypothyroidism was improved. The patient was not seen in follow-up from May until August of 2005 due to two appointments that were missed by the patient.
>
> In August 2005, the patient showed distinct evidence of hypothyroidism, which was confirmed by an elevated serum TSH of 39.4

6

mc/ml. Her dosage of thyroid hormone was increased and once again the patient did not keep scheduled appointments in the clinic from October 2005 through April 2006.

I next saw the patient on May 2, 2006 at which time the patient continued to show evidence clinically of hypothyroidism, which was substantiated by an elevated TSH of 30.25 mc/ml. The patient's thyroid medication to correct the hypothyroidism was increased at that time and I have not seen the patient since May 2006. I should note that she once again did not keep a clinic appointment on August 2, 2006.

**Certainly from the standpoint of the patient's disease of hypothyroidism, she is disabled. She has difficulty in concentration. I think part of the reason for her persistent hypothyroidism has been her inability to understand the reason for a daily intake of thyroid hormone and I believe this is aggravated by her hypothyroid condition. I do not believe this patient could reliably be expected to follow a job that requires daily fulltime working responsibilities. Once her hypothyroidism is corrected by thyroid medication, she should at that time be capable of keeping a fulltime job from the standpoint of her thyroid condition.**

**In summary, this patient has developed hypothyroidism secondary to a treatment dose of radioactive iodine for hyperthyroidism. This outcome was explained to the patient at the time she was treated with radioactive iodine and it is not unexpected from a medical standpoint. The difficulty has been to follow the patient at frequent enough intervals in the clinic to arrive at a proper dose of thyroid hormone, which should fully correct the hypothyroidism in a compliant patient.**

> **I will continue to be available to help in
> the management of this patient's
> hypothyroidism. At the present time however,
> I do not believe she is medically able to
> reliably perform in a fulltime job.**

(R. at 483-484, emphasis added).

The ALJ's reference to Dr. Meek's letter of August 24, 2006, only mentions those portions of the letter favorable to a finding of nondisability, while ignoring the opinion of Dr. Meek that plaintiff is presently disabled.  The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  Dr. Meek further indicated that once her hypothyroidism is corrected by thyroid medication, she should at that time be capable of a fulltime job.  He also noted that they needed to determine the proper dose of thyroid medication.  Dr. Meek also stated, and the ALJ failed to mention, that part of the reason for plaintiff's persistent hypothyroidism has been her inability to understand the reason for a daily intake of thyroid hormone, which Dr. Meek believed was aggravated by her hypothyroid condition.

Furthermore, an ALJ must evaluate every medical opinion in the record.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff

can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. However, even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

   The failure of the ALJ to even mention the opinions of Dr. Meek (although they include his opinion on an issue reserved to the Commissioner, i.e., whether plaintiff is disabled) clearly violates the Commissioner's own regulations and rulings. Lackey v. Barnhart, 127 Fed. Appx. 455, 457-458 (10th Cir. Apr. 5, 2005); Miller v. Barnhart, 43 Fed. Appx. 200, 203-204 (10th Cir. July 22, 2002). Therefore, this case should be remanded in order for the ALJ to consider what weight to give to the opinions of Dr. Meek, including his opinions regarding plaintiff being disabled, in accordance with the regulations and rulings.

   Defendant argues that the omission by the ALJ of the opinion of Dr. Meek that plaintiff is disabled is harmless error. Courts

should apply the harmless error analysis cautiously in the administrative review setting.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  <u>Fischer-Ross</u>, 431 F.3d at 733; <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).

First, it is not at all clear that the ALJ considered the opinion of Dr. Meek that plaintiff was disabled, and would remain disabled until her hypothyroidism is corrected by medication, and noting that they needed to determine the proper dose of thyroid medication.  Second, even if the ALJ considered it and chose to ignore the opinion of Dr. Meek that plaintiff was disabled, in violation of the case law, regulations, and rulings noted above, the court cannot confidently say that no reasonable factfinder could have concluded that plaintiff was disabled had he considered all the evidence in this case, including the opinion of Dr. Meek that plaintiff was disabled.

Disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a). The opinion of Dr. Meek clearly states that plaintiff is presently disabled and unable to work, noting her difficulty in concentration. He does not state how long she had been disabled as of August 24, 2006. Although he states that she should be able to work once her hypothyroidism is corrected by medication, he does not indicate how long it will take for the hypothyroidism to be sufficiently corrected by medication so that she can work. Dr. Meek further noted that they still needed to arrive at a proper dose of medication, and he provides no time frame as to how long that can take. Although the court cannot confidently say that no reasonable factfinder could have concluded that plaintiff was disabled after considering all the evidence in the case, including the opinion of Dr. Meek, it may have been difficult for an ALJ to determine whether or not plaintiff was disabled for a 12 month period without the additional information noted above. Therefore, on remand, should the ALJ determine that the information from Dr. Meek is inadequate for the ALJ to determine if plaintiff is disabled, the ALJ should consider recontacting Dr. Meek to obtain additional information from him. 20 C.F.R. § 404.1512(e).

The ALJ, in his decision, clearly relied on plaintiff's noncompliance with physician recommendations to take her

medication (R. at 23). However, as noted above, the ALJ failed to mention that Dr. Meek stated that he believed part of the reason for this was her inability to understand the reason for a daily intake of thyroid hormone, <u>which Dr. Meek believed was aggravated by her hypothyroid condition</u> (R. at 484, emphasis added). On remand, the ALJ shall take this into account when considering plaintiff's failure to comply with medication requests for her physicians.

**IV. Did the ALJ err by failing to order a further consultative examination?**

The Commissioner has broad latitude in ordering consultative examinations. Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim. There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to

resolve the issue of impairment.  In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168 (10th Cir. 1997).

In this case, a mental status examination was conducted on the plaintiff by Dr. Allen (R. at 356-358).  Plaintiff argues that a request was made by counsel at a hearing on September 14, 2006 for a further psychological consultative examination because of counsel's belief that plaintiff's memory, concentration and IQ were in a below-average range, and that the prior evaluation was inadequate because no testing was done.  Plaintiff asserts that the ALJ indicated that he would consider ordering another evaluation (Doc. 8 at 6-8 and Doc. 8-2).  However, there is no transcript from that hearing date, and the transcript of the subsequent hearing on November 13, 2006 does not mention this issue.  Thus, there is no indication in the record why the ALJ chose not to order a further psychological consultative examination in this case.  In the absence of any explanation by the ALJ for not ordering a further consultative examination, and in light of the fact that this case is being remanded for further hearing for the reasons set forth above, the court will not

weigh, in the first instance, whether a further consultative examination should be ordered.  On remand, if plaintiff renews their request for a further consultative examination, the ALJ shall (after considering the appropriate regulations, rulings and case law set forth above) either order the examination, or set forth why a further examination is not warranted.

**V.  Are the ALJ's RFC findings inconsistent with the ability to work fulltime?**

The ALJ's RFC findings state that plaintiff "requires the ability to alternate positions (sitting and standing) at 30-40 minute intervals" and "can stand and/or walk only 2 hours out of an 8 hour work day" (R. at 21, 22).  Plaintiff argues that it would be impossible to work an 8 hour day with these 2 restrictions as the need to alternate every 30-40 minutes would require that she be able to stand and/or walk for more than 2 hours (Doc. 8 at 9).  In light of the errors noted above, new RFC findings may have to be made when the case is remanded.  However, on its face, plaintiff's argument has merit and should be taken into consideration when RFC findings are made on remand.

**VI.  Does 1,000 jobs in the state constitute a "significant number" of jobs?**

As noted above, the errors by the ALJ could result in new RFC findings and new findings at step five, including identification of other work in the national economy that

plaintiff can perform. Nonetheless, this issue will be briefly addressed. Of the two jobs identified as jobs that plaintiff could perform, the vocational expert (VE) testified that 350 such jobs exist in Wichita, 1,000 such jobs exist in the state of Kansas, and 155,000 such jobs exist in the national economy (R. at 25, 528). If the Commissioner finds that plaintiff cannot perform past relevant work given his RFC, the Commissioner will then determine if plaintiff can perform work which exists in significant numbers in the national economy (either in the region where such individual lives or in several regions of the country). 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

Plaintiff argues that the ALJ failed to address the key issue of whether 1,000 statewide jobs constitutes a significant number of jobs. Although it could be argued that 1,000 statewide jobs is small enough to put the issue in a "gray area" requiring the ALJ to address whether plaintiff can perform work which exists in significant numbers, see Sterling v. Astrue, 2008 WL 45415 at *6-7, (D. Kan. Jan. 2, 2008, Case No. 07-1094-MLB, Doc. 11 at 14-18), the ALJ, after setting forth the number of these two jobs that were available, then stated that plaintiff is capable of making an adjustment to other work that exists in "significant numbers in the national economy" (R. at 25). Thus, there is no merit in plaintiff's contention that the ALJ failed to address the key issue of whether the jobs identified

15

constitutes a significant number of jobs in the national economy.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on November 13, 2008.


                                            s/John Thomas Reid
                                            JOHN THOMAS REID
                                            United States Magistrate Judge